ARKANSAS VALLEY TRUST COMPANY *v.* YOUNG.

Opinion delivered March 12, 1917.

1. ADMINISTRATION—AGREEMENT OF DECEASED TO CONVEY LAND—POWER OF PROBATE COURT TO ORDER A CONVEYANCE.—Kirby's Digest, § 213, gives an administrator, with the approval of the probate court, authority to convey land belonging to deceased to a third party in pursuance of an agreement between deceased and the third party, where the administrator is satisfied that payment has been made therefor according to the contract. The statute merely grants to the administrator this discretion, and does not confer upon the probate court jurisdiction to enforce the equitable remedy of specific performance.

2. ADMINISTRATION—AUTHORITY OF PROBATE COURTS.—Probate courts are the guardians of the estates of deceased persons, and have the custody of such estates for the purpose of settling the debts and performing the contracts entered into by the decedent. It is their duty to administer these estates in the most expeditious and frugal manner consistent with the rights and interests of all concerned. Kirby's Digest, § 213, gives a more direct and expeditious relief than that under the right of specific performance in proceedings in chancery.

3. ADMINISTRATION—AGREEMENT TO CONVEY LAND BY DECEASED—ORAL AGREEMENT.—Deceased agreed *orally* to convey certain land to one A. but died before making the conveyance. *Held*, under Kirby's Digest, § 213, the administrator may make a valid conveyance of the same to A. with the approval of the probate court.

4. ADMINISTRATION—STATUTE OF FRAUDS.—Where the personal representative of a decedent cannot plead the statute of frauds, a judgment creditor cannot do so.

5. ADMINISTRATION—CONTRACT TO CONVEY LAND—DEED BY ADMINISTRATOR.—Deceased was indebted to one A. and in order to pay the debt agreed to convey certain lands to him, A. in turn surrendering certain securities which he held as collateral. Before the deed was executed deceased died. *Held*, the facts presented a case for the application of Kirby's Digest, § 213, and that a conveyance by the administrator to A., under authority of the probate court, was valid.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*Read & McDonough* and *Kimpel & Daily,* for appellant.

1. Probate courts are not courts of equity—they have no chancery jurisdiction to enforce the specific per-

formance of contracts. Any authority to justify the order here must be found under Kirby's Digest, § 213, Acts 1859, No. 181. This is a special power and must be exercised as such. Courts of chancery do, under certain circumstances, decree specific performance of oral contracts for the conveyance of real property. This is an equitable remedy and is exercised only by courts of chancery, and by them with caution. 39 Ark. 429.

2. This statute has been on the books since 1859. The probate court is one of limited jurisdiction, and the Legislature could not authorize an administrator to make a conveyance. The order was void. 50 Ark. Law Rep. 90.

It was never intended to vest in probate courts jurisdiction to enforce or decree specific performance. Rev. St., chap. 23, § 1; Kirby's Digest, § § 213, 214, 209, 212, etc.

3. The proof was not sufficient to authorize specific performance by a court of chancery on the ground of partial performance. 41 Ark. 97.

*John H. Vaughan, Geo. F. Youmans* and *Nagel & Kirby,* of St. Louis, Mo., for appellees.

1. The estate was solvent as found by the probate court.

The probate court had jurisdiction to make the order under the act of February 21, 1859, Kirby's Digest, § § 213, 214. The homestead is not involved here as in 50 Ark. Law Rep. 90. This is the only case construing this act. The contract here is one that could have been enforced against Young specifically if he had lived. 66 Ark. 333; 50 S. W. 695.

*Read & McDonough* and *Kimpel & Daily,* for appellants, in reply.

1. Probate court had no jurisdiction to make the order. There was no written contract. In 123 Ark. 189 this court did not decide that the probate court had equitable jurisdiction to decree specific performance of an oral contract upon proof of part performance.

The contract here was void under our statute of frauds. 51 Me. 423; 49 Cal. 469, and cases cited in our brief, *supra.*

2. There is no proof of part performance in the lifetime of Young.

*John H. Vaughan, George F. Youmans* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellees.

1. *Oliver* v. *Routh,* 123 Ark. 189, does hold that section 213 does confer the power upon the probate court to enforce an oral contract to convey lands where partial performance is shown under the equity rule. Section 213 is a valid statute. Const. 1836, art. 6, § § 6 and 10; Acts 1873, p. 113; Const. 1874, art. 7, § § 15, 34, etc. The jurisdiction is now the same as it was before the transfer of probate jurisdiction to the circuit court by Acts 1873. 33 Ark. 575, 727; 50 Ark. 34.

The act merely provides a cumulative remedy. Suth. on Stat. Const., § 505, p. 505, and cases cited; 8 Ark. 9; 50 *Id.* 34; 119 Mass. 482.

The giving of a limited jurisdiction to enforce specific performance, etc., of contracts to convey land, entered into by the testator or intestate during life is a subject-matter properly *within* the jurisdiction "pertaining to probate courts" and the "estates of deceased persons," and is not foreign to such jurisdiction. Woerner on Adm. (2 ed. star, p. 350); 5 Sawy. (U. S.) 229; 217 U. S. 331; 53 Atl. 746, 750; 54 *Id.* 938; 51 Me. 423; 82 Pac. 68; 104 N. W. 467; 81 Pac. 334-6; 117 S. W. 730; 89 Pac. 477; 41 N. W. 977; 20 Wall. 375; 128 U. S. 53, 86; 17 Mo. 347; 80 Pac. 38; 20 Ga. 142; 38 Conn. 86; Pom. Spec. Perf., § 497, and others.

2. The contract was enforceable in equity. 66 Ark. 333; 107 *Id.* 473; 81 *Id.* 70.

3. The statute of frauds does not apply and this proceeding is not one within the usual cognizance of courts of equity. 36 Cyc. 543, 758; 20 Enc. Pl. & Pr. 389; 3 Pom. Eq., § 1400.

The probate court has jurisdiction over matters affecting the estates of deceased persons, to the extent prescribed by law. 67 Ark. 522; 123 *Id.* 211, 222; 82 Pac. 68; 61 N. H. 624; 95 N. E. 973; 163 U. S. 625; 94 *Id.* 320; 170 *Id.* 288; 203 *Id.* 552, etc.

4. The defense of the statute of frauds may be waived. 96 Ark. 186, 194; 71 *Id.* 302. A stranger nor a creditor can not plead it. 11 Neb. 222; 49 Tenn. 127; 71 Ala. 202; 72 Ind. 505; 109 Fed. 48. A contract within the statute is voidable only, not void. 15 O. 569, 572; 17 Mo. 347; 18 Pick. 369; 22 Ark. 290; 108 Ark. 80; 84 *Id.* 61; 50 *Id.* 228. An administrator is not bound to plead limitation or the statute of frauds.

5. The statute is not confined to written contracts. See also 1 Fed Cases, 132.

STATEMENT BY THE COURT.

Appellees, as administrators of the estate of D. J. Young, deceased, presented a petition to the probate court of Sebastian County, alleging that D. J. Young, a short time prior to his death, agreed with the Anheuser-Busch Brewing Association (hereinafter for convenience called the association) to convey to it certain real property, describing it, in satisfaction of his indebtedness to it in the sum of $24,154.59. They alleged that D. J. Young was solvent; that the widow and heirs of Young desired to carry out the agreement he made with the association and pursuant thereto had executed a deed conveying the property described in the petition to the association. They set forth that if the real property described in the petition were conveyed to the association in satisfaction of Young's debt to it that there would be ample assets of the estate left for the payment of all other debts and liabilities; that the satisfaction of the debt of Young to the association would be a fair consideration for the real property described in their petition, and they prayed an order of the probate court authorizing and directing them to make the conveyance.

The probate court granted the prayer of the petition and entered an order directing the administrators to execute a deed conveying the property described in the petition to the association in satisfaction of Young's indebtedness to it.

The appellants, who were judgment creditors of the estate of Young, duly prosecuted their appeal to the circuit court, and in that court they demurred to the petition, and also answered denying specifically all of its allegations, and setting up that there was no contract entered into between D. J. Young and the association and no memorandum in writing of the alleged agreement between Young and the association for the conveyance of real property signed by him or any one by him properly authorized. Appellants contended that a conveyance under the order of the probate court would be void under the statute of frauds, and also challenged the jurisdiction of the court to make the order.

It is conceded that there was no written contract between Young and the association by which the former agreed to convey to the latter real estate in payment of a debt. But it was contended by the petitioners that the testimony showed an oral contract with such part performance on the part of the association as would have entitled it to a deed had Young lived. The circuit court so found and entered its judgment affirming the judgment of the probate court directing the petitioners to make the deed. This appeal followed from that judgment. Other facts stated in the opinion.

WOOD, J., (after stating the facts). I. As authority for the probate court to make the order under review, appellees invoke section 213 of Kirby's Digest, which is as follows: "When any testator or intestate shall have entered into any contract for the conveyance of lands and tenements in his lifetime which was not executed and performed during his life, and shall not have given power by will to carry same into execution, it shall be lawful for the executor or administrator of such testa-

tor or intestate, with the approval of the court, in term
time, to execute a deed of conveyance of and for such
lands pursuant to the terms of the original contract, such
executor or administrator being satisfied that payment
has been made therefor according to the contract, and re-
citing the fact of such payment to the testator or intes-
tate, or to such executor or administrator, as the case may
be, which deed may be acknowledged and recorded as
other deeds, and shall have the same force and effect to
pass the title of such testator or intestate to any such
lands as if made pursuant to a decree of court.''

The Constitution of 1836, under which the above act
was passed, conferred upon probate courts jurisdiction
''in matters relative to the estates of deceased persons,
executors, administrators and guardians, as may be pre-
scribed by law, until otherwise directed by the General
Assembly.'' Const. of Ark. 1836, art. 6, § 10. It was not
otherwise directed by the General Assembly until 1873,
when a law was enacted conferring on the circuit court
''exclusive original jurisdiction of everything properly
pertaining to matters cognizable in courts of probate, and
all the powers and jurisdiction now possessed by courts
of probate.'' Act of April 16, 1873.*

The Constitution of 1874 confers on the probate court
''exclusive original jurisdiction in matters relative to
estates of deceased persons, executors, administrators,
etc., * * * as is now vested in the circuit court or may here-
after be prescribed by law.'' Const. 1874, art. 7, § 34.

The statute under review is clearly within the above
provision of our Constitution. The statute does not take
from chancery courts their ancient jurisdiction to enforce
the equitable remedy of specific performance as applied
to contracts for the conveyance of real estate, nor does it
confer such jurisdiction upon courts of probate. That
remedy, as enforced in courts of chancery, contemplates
adversary proceedings in which the party who conceives
that he is entitled to the remedy of specific performance
institutes a suit by a bill in chancery against the recusant

* Act 53, p. 113, Acts 1873—*Reporter.*

party to the contract, praying that he be required to specifically perform the same. 4 Pomeroy's Eq., § 1400; 20 Enc. Pl. & Pr. 389; 36 Cyc. 543, 758.

"In most of the States," says Mr. Pomeroy, "the statutes expressly provide for the case where the vendor dies before completing the contract and leaves heirs or devisees adult or infant. * * * This legislation is of different types. In some States it deals entirely with the suit in equity for a specific performance. In others it provides for a more summary special proceeding by which the contract may be enforced without suit, as a step in the settlement of the deceased vendor's estate. By the common form of this special proceeding, where a vendor who had entered into a written contract, dies before completing the contract, and the party entitled to a conveyance has paid or is ready to pay the purchase price, the probate court which has control of the administration may authorize or order the administrator or executor of the decedent *to make the conveyance which the vendor himself should have made had he been alive*; and the conveyance so made is declared to have the same force and effect as though it had been executed by the vendor himself." Pomeroy on Contracts, § 497, p. 556.

Our statute takes the form of the special proceeding by which the contract may be performed without suit and as a step in the settlement of the deceased vendor's estate. We must assume that the General Assmbly of 1859 was familiar with our statute of frauds, which was a part of the Revised Statutes of 1837, and with the decisions of this court at that time, holding that notwithstanding the statute of frauds specific performance of an oral contract for the sale of lands could be enforced by a bill in chancery where the party seeking such relief had performed or so partly performed the contract on his part as to make it inequitable or a fraud upon his rights not to grant the relief prayed. Rev. Stat. (1838), chap. 30, § 1; *Keatts* v. *Rector,* 1 Ark. 391; *Underhill et al., Admrs.* v. *Allen,* 18 Ark. 466; *Wynn* v. *Garland,* 19 Ark. 23.

(1)   In view of the statute of frauds and these decisions, if the Legislature of 1859 had intended to vest courts of probate with jurisdiction to enforce the equitable remedy of specific performance of contracts for the conveyance of lands it can not be doubted that they would in express terms have authorized the vendee or those in privity of right to institute suit for that purpose in the probate court against the personal representatives of the vendor, his heirs, assigns, or devisees. And the Legislature, in express terms, would have conferred upon the probate court jurisdiction to hear the cause and to determine the same according to the rights of the parties. No such procedure is projected, even in outline, by the language of the act under consideration. It does not provide for an action at all to be instituted in probate court for specific performance. The vendee or those claiming under him are not authorized to file any petition or complaint in the probate court asking for the equitable remedy of specific performance. This act simply confers authority upon the executor or administrator of the testator or intestate, with the approval of the court, to execute a deed of conveyance pursuant to the terms of the original contract with the decedent, where the executor or administrator is satisfied that payment has been made according to the contract. The statute does not give to the purchaser the right to insist that this special proceeding be pursued for his benefit. It is only a license or permission granted by the sovereign power to the executor or administrator to make the deed when he finds certain facts and conditions to exist. The license is to be exercised then only upon the approval of the probate court.

The executor or administrator, who is an officer of the probate court, has in his hands such property of the decedent, real and personal, as is not exempt under the Constitution, for the purpose of the settlement of the debts of the estate, under the orders of the probate court. He may put the statute in motion, and, with the approval of the probate court, is licensed to make the conveyance

as one of the steps in the regular course of the adminis-
tration of the *res* in his hands for the payment of the debts
of the decedent. It would do violence to the language of
the act to construe it as expressing an intention upon the
part of the Legislature to confer jurisdiction upon pro-
bate courts to enforce the equitable remedy of specific
performance of a contract to convey real estate.

In the recent case of *Oliver* v. *Routh,* 123 Ark. 189,
196, we held that "the probate court had no power to
make an order for specific performance of the contract
made by the decedent in his lifetime to convey his home-
stead to another." In that case we said: "The author-
ity to grant specific performance of an executory con-
tract to convey land against the executor or administrator
of a decedent is a special power conferred upon the pro-
bate court. It is to be exercised in a special manner, and
not according to the course of the common law." In that
case it was not necessary to the decision and the court
did not have under consideration, and hence did not de-
cide, the question as to whether or not the statute now
under review was unconstitutional because it invested
probate courts with the jurisdiction exercised by courts
of chancery to enforce the equitable remedy of specific
performance of a contract for the conveyance of land.
True, we there designated the privilege or license con-
ferred by this statute as "the authority to grant specific
performance," yet what we decided in that case was that
the authority under this statute is a "special power,"
and not one to be exercised according to the course of the
common law, and that the wife had not joined in the con-
tract for the conveyance of the homestead. That decision
is not in conflict, but in harmony with our present holding.

(2) Since our Constitution (art. 7, sec. 34) vests
courts of probate with exclusive original jurisdiction in
matters relative to the estates of deceased persons, execu-
tors, administrators, etc., it can not be questioned that the
authority or license contained in this statute is peculiarly
germane to the jurisdiction so conferred. Thus, by the

organic law, probate courts are made the guardians so to speak, of the estate of deceased persons, and have been given the custody of such estates for the purpose of settling the debts incurred and performing the contracts entered into by the decedent. It is their duty to administer these estates in the most expeditious and frugal manner consistent with the rights and interests of all concerned. The Legislature doubtless had in mind in enacting this law the time and expense usually incident to adversary proceedings in a suit in chancery for the specific performance of contracts to convey lands. Instead of compelling the one entitled to the remedy of specific performance to pursue a circuitous route through the chancery court to obtain such relief, the Legislature adopted the more direct, simple and inexpensive course prescribed by this statute. Thus the summary proceedings authorized by the act of 1859, as one of the steps in the administration, accomplishes the same purpose that would be attained by the equitable remedy of specific performance, but in a manner far more advantageous to the estate.

In *Ferguson* v. *Bell's Admr.,* 17 Mo. 347, 350, the court, concerning similar legislation, said: "Indeed this authority was given to the probate courts to be liberally used and exercised for the speedy execution of such contracts, without the delay and expense usually attending a proceeding in chancery."

And the Supreme Court of California says: "This special statutory remedy would seem to be a wise provision. It evidently tends to save the expense and delay that would follow a separate action in equity for a specific performance." *In re Garnier's Estate,* 82 Pac. 68, 69.

The Constitution of Minnesota vests its probate courts with jurisdiction over the estates of deceased persons. See art. 6, sec. 7, Const. of Minn., Rev. Stat. Minn. 1905, p. 1176. *Frank H. Peterson* v. *Wm. H. Vanderburgh,* 77 Minn. 218.

*In re Mousseau's Estate,* 41 N. W. 977, the Supreme Court of Minnesota held that a statute similar to the one

under review was valid and appropriate to the adminis-
tration of estates under their Constitution. Judge
Mitchell, in a concurring opinion, spoke of such legisla-
tion as appropriate "for the purpose of disposing of the
decedent's interest in the land and freeing it from the
claims of administration."

We have thus adverted to the wisdom and policy of
the statute under consideration for the purpose of show-
ing that as an act providing for one of the steps to be
taken in the administration of estates, it does not in any
manner conflict with the jurisdiction of courts of chan-
cery to enforce specific performance of contracts, and is
not only a valid enactment, but one exceedingly appropri-
ate to the jurisdiction conferred by our Constitution on
courts of probate.

Learned counsel for appellants, in their original
brief, among other things, say: "The Legislature, by
this act, gives to the probate court, which is, in a sense,
a court of limited jurisdiction, a special limited jurisdic-
tion to authorize an administrator to convey lands when
his intestate has entered into a contract to convey same
during his lifetime. * * * The title of the act is 'An Act to
enable administrators and executors to make title.' Thus
it will be seen that neither in the title nor in the body of
this act, upon which appellees must rely, is there any
reference to specific performance. * * * It was never in-
tended to vest in the probate court that chancery jurisdic-
tion which, under our statutes, has always been either in
our circuit courts, sitting in chancery, or as, since 1903,
in separate courts of chancery."

These statements are a correct and accurate charac-
terization of the act and its purpose. But counsel for
appellants, in their "Supplemental Brief in Reply" have
made an elaborate argument, endeavoring to show that
the act under review is unconstitutional, based upon the
erroneous assumption that the act does vest probate
courts with "jurisdiction of the pure equitable remedy of
specific performance." Having reached the conclusion
that the act does not vest the probate court with such

jurisdiction, it would be *obiter* to decide whether or not such an act, if it did exist, were constitutional. We therefore pretermit any discussion or decision of the interesting question propounded by counsel, and so exhaustively argued in their "supplemental brief in reply," towit: "Has a probate court, under the Constitution and laws of Arkansas, jurisdiction of the pure equitable remedy of specific performance?"

II. Counsel for appellants also, in their original brief, urge that the statute is applicable only to written contracts. They say, "The only character of contract with reference to lands recognized by our statutes or by courts of law generally are written contracts." Hence, they now contend that the present contract because of the statute of frauds could not be performed by courts of probate.

The jurisdiction conferred on probate courts under our Constitution is general and exclusive in the matters relating to the estates of deceased persons, administrators, executors, etc., and they may determine all issues arising within the sphere of their jurisdiction according to the principles of law involved. If the issue is one that can only be decided correctly by the application of the rules and principles of equity, then the court having plenary power over the subject-matter must so decide it. This special act confers jurisdiction upon the probate court to approve the making of a deed by the personal representative of a decedent, and when it is made, under the direction of such court, it has the same force and effect to pass title as if made pursuant to a decree of court. Therefore, if the approval of the probate court is sought under the statute for permission to make a deed where an oral contract is involved, the court, in deciding the issue, must apply the principles applicable to the performance of such contracts just as they are applied in courts having jurisdiction to enforce the remedy of specific performance. But this power is quite another and different thing from having jurisdiction to hear and determine causes of action cognizable only in courts of chancery.

In *Cresswell* v. *McCaig,* 11 Neb. 222, it is held (quoting syllabus): "The statute of frauds does not render a contract void, but voidable, at the option of either party; but it does not require a party to ignore considerations of moral obligation, equity and good faith by pleading the same, and a creditor can not do so." See, also, *Wright* v. *Jones,* 105 Ind. 17; *Kemp* v. *National Bank,* 109 Fed. 48; *Minns* v. *Morse,* 15 Ohio 569; *Cahill* v. *Bigelow,* 18 Pick. 369.

This court, in *El Dorado Ice & Planing. Mill Co.* v. *Kinard,* 96 Ark. 186, said: "A parol agreement is neither illegal nor void. A plea of the statute of frauds is a plea or defense which may be waived."

In *Ferguson* v. *Bell's Admr.,* 17 Mo. 347, an infant executed a deed, and after coming of age, expressed satisfaction with her bargain and received part of the consideration and spoke of her intention to make a confirmatory deed, but died suddenly without doing so. The probate court held that sales by infants were not void, but voidable only; that the privilege of avoiding or disaffirming the contract or deed of an infant was one that could be exercised by his personal representative or his privies in blood, but not by his assignees or privies in estate only. The administrator of the infant refused to disaffirm the contract, and the Supreme Court sustained his action, saying: "The probate court of St. Louis County had ample jurisdiction over the whole subject-matter of the petition, and the probate court erred in refusing to order the deed to be made by the administrator upon the proof as preserved by the petitioners on this record."

The general statute of limitations, when set up in actions on contracts to which it applies, is analogous to the statute of frauds. The effect of both alike in actions on contract to which they apply is to bar recovery, though the contract sued on be valid. In one of the earlier cases this court, through Judge Fairchilds, speaking of the statute of limitations, said: "It is an obligation resting upon no man to discharge an honest subsisting debt by the plea of limitations. What would be infamous by a

man when alive can not be commendable or legally binding to be done for him by his representatives when he is dead." *Conway* v. *Reyburn,* 22 Ark. 290. See, also, *Jacoway* v. *Dyer,* 50 Ark. 228; *Williams* v. *Risor,* 84 Ark. 61; *Rhodes* v. *Driver,* 108 Ark. 80.

Honest men are always anxious and willing to perform their contracts when they are able to do so. When death only prevents one from performing a contract, his personal representative is not compelled to set up the statute of frauds to defeat the performance of such contract. To so hold would be to convert a statute which was intended to shield from fraud into an instrument by which fraud could be perpetrated. For, if the personal representative could be compelled to set up the statute of frauds to defeat a contract which the decedent not only intended to perform, but the performance of which could have been enforced, this would be a fraud upon the rights of parties to contracts and perpetrated by the personal representative whose duty it is, as far as possible, to perform those contracts. We can never underwrite such a doctrine.

(3-4) The statute under consideration contemplates that the personal representative of a decedent may, on his own motion, put the same in operation by seeking the approval and direction of the probate court concerning the subject-matter contained in the statute. It necessarily follows that it is not incumbent upon him to set up the statute of frauds. The statute of frauds has no application to proceedings under this statute, for no adversary proceedings are provided for. The personal representative only is authorized to take the initiative and make the deed, and thus perform the contract of the decedent under the statute in those cases, where the conditions exist that render the statute of frauds inapplicable. Where the personal representative of a decedent can not plead the statute, a judgment creditor can not do so, even under the broad provisions of the act of 1909, p. 956. At the time the act of 1859 became a law, oral contracts for the sale of land, as we have seen, were not void, but voidable

only, and the performance of same could be enforced where the conditions essential to such performance existed, notwithstanding the statute of frauds. See *Keatts* v. *Rector; Cahill et al., Admrs.,* v. *Allen; Wynn* v. *Garland, supra.*

Since the Legislature must have known of these decisions, the conclusion is irresistible that if it had intended that the statute should apply only to written contracts, it would have said so in plain terms. We may assume, also, that the Legislature, while they had under consideration the passage of this act, had their attention drawn to similar legislation in other states. At that time our neighbor State of Texas had a similar law, only it specified *contracts in writing.* Now, with such a model before them, if they had intended to limit the operation. of the statute to written contracts, they would have followed the model and have put into the statute the words "written contracts." Instead, they have deliberately chosen to write into the act of 1859 the words "any contracts," showing unmistakably an intention not to limit the operation of the statute to written contracts only, but to make it apply to oral contracts as well. At any rate, the language "any contracts" is certainly broad enough to include oral contracts. To construe the statute as meaning only written contracts, would, in effect, change its language by writing into it the word "written" before the word "contract." Where the language of a statute is unambiguous, the intention of the Legislature must be gathered therefrom. If we change it, we thereby encroach upon the peculiar function of the sovereign power lodged in a co-ordinate branch of the Government. Although as individual judges, some of us doubt the wisdom of lodging the important power prescribed by this special statute in probate courts, whose judges are not required to be lawyers, and who may not therefore have the technical knowledge necessary to best determine such an issue, yet it nevertheless appears to a majority of us that the law is so written, hence it must be enforced as enacted.

III. The appellants contend in the last place that the proof is not sufficient to sustain the findings and judgment of the court. The broad language ''any contracts'' is sufficient to confer jurisdiction upon probate courts over the subject-matter regardless of whether the contract has been partly performed. Whether probate courts would abuse their discretion and commit reversible error in making the order in cases where the contract had not been performed or partly performed by one of the parties to it, does not arise and need not be decided now. For here the contract was sufficiently performed by the association.

(5)  The facts briefly stated, are as follows: D. J. Young died February 21, 1915. He was indebted to the association in the sum of $24,154.59. The court found, and there is no evidence in appellant's abstract to the contrary, that his estate was solvent. The association, for some time prior to Young's death, had been pressing him for a settlement. On October 12, 1914, a written agreement was entered into by which Young acknowledged indebtedness to the association in the sum of $25,000, and executed notes in the aggregate for $15,000 of the indebtedness, evidenced by three notes for $5,000, payable at future dates named, with interest, and as security for the payment of these notes at the times mentioned, Young pledged stock in certain corporations shown to be of the face value of $56,700, and to have almost that actual value. Young, in several letters, had offered to settle his indebtedness to the association by a conveyance of unincumbered real estate. Young was also indebted to the First National Bank of Fort Smith, and it held a mortgage on certain of his real estate to secure that indebtedness.

After considerable negotiation, evidenced by letters and as shown by personal interviews, the association accepted Young's proposition and agreed to take real estate in settlement of his debt. They agreed upon the real estate that should be conveyed, which included a part of the real estate of Young upon which the bank had a mortgage. To secure the release of this mortgage, Young and the

bank entered into an agreement whereby the association was to deliver the stock which it held as collateral for Young's debt to the bank, and the bank agreed to take this stock as security for its debt, and in consideration of this stock, to release the real estate from the mortgage included therein, which Young had agreed to convey to the association. This agreement was consummated on the part of the bank, and the association in January, 1915, and was evidenced by written receipt of the bank showing that the association had delivered and it had accepted the stock in pursuance of the agreement.

After the real estate to be conveyed had been definitely agreed upon, Young instructed the representative of the association to draw up the deed, which was done, and was ready to sign two or three days before Young's death. The representative of the association went to Young's residence with the deed for him to sign, but Young was then so near death's door that he was unable to sign the deed.

On April 15, 1915, the probate court ordered the administrators of Young's estate to execute the deed, and thus carry out the agreement entered into between D. J. Young in his lifetime and the association. The deed was executed the 19th day of April, 1915, and was signed by Angie E. Young and J. Ross Young, administrators, and also by Angie E. Young, the widow, and the heirs of D. J. Young, in their individual rights.

The mortgage of the association to the bank was introduced in evidence, showing that it had been filed for record December 14, 1914, and the release of the real estate covered by the three party agreement was endorsed on the mortgage under date of April 27, 1915.

It was shown that as a part of the agreement entered into between Young and the association, the association was to pay the taxes which had accrued on the property, amounting to the sum of $1,409.19. These taxes were not paid by the association until after the probate court had ordered an execution of the deed.

The evidence was sufficient to sustain the finding and judgment of the court. The contract was proved, and such part performance thereof on the part of the association as would have entitled it to have the contract performed by Young had he lived. The surrender by the association of the valuable collateral to the creditor of Young, the benefit of which Young received, in pursuance of the agreement to do so, was sufficient to constitute a part performance. The surrender was irrevocable because the stock had been delivered by the association to, and received by, the bank, and the effect of this transaction, under the agreement, constituted a release of the real estate covered by the agreement and embraced in the mortgage from the time the stock was delivered to and accepted by the bank. The entering of the release or satisfaction upon the mortgage afterward was but an evidence of what, in legal effect, had already taken place. See *King* v. *Williams*, 66 Ark. 333. A more meritorious case for the application of the statute could scarcely be conceived.

The judgment is correct in all things, and it is therefore affirmed.

McCULLOCH, C. J., and HART, J., dissent.