CONSOLIDATED INDEMNITY AND INSURANCE COMPANY *v.*
FISCHER LIME & CEMENT COMPANY.

4-2948

Opinion delivered April 3, 1933.

132

*M. Danaher* and *Palmer Danaher,* for appellant.

*Owens & Ehrman* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

SMITH, J. Separate suits were brought by the Fischer Lime & Cement Company and the Big Rock Stone & Material Company against the Merrill Engineering Company and the Consolidated Indemnity & Insurance Company as the surety of its codefendent, which suits were consolidated and tried together, and a decree was rendered in favor of both plaintiffs against both defendants.

The Merrill Engineering Company entered into a contract with the State Highway Commission to construct a part of a State highway, and gave bond, as required by law, for the due performance of the contract, with the Consolidated Indemnity & Insurance Company as its surety. Each plaintiff furnished the contractor with certain material used in the performance of the construction contract, upon which partial payments were made. The value of the material and the balance due thereon is not disputed, and only the surety company has appealed from the decree adjudging liability against both defendants.

The surety company defends upon two grounds, (1) that no statement of the account was filed with the secretary of the Highway Commission within thirty days after the completion of the work as required by § 53 of act 65 of the Acts of 1929 (vol. 1, Acts 1929, page 326); and (2) because no action was brought on the bond until more than six months after the date of the final estimate of the construction work given the contractor by the State Highway Commission as required by § 3 of act 368 of the Acts of 1929 (vol. 2, Acts 1929, page 1487).

As to the defense that the claim was not filed with the secretary of the Highway Commission within thirty

days after the completion of the work, it may be said that it is first insisted by appellees that there was a substantial compliance with the statute in this respect. It is also insisted that this requirement appearing in act 65 was repealed by implication by act 368, and, as we have concluded that appellees are correct on this last proposition, we do not decide whether they are also correct on the first.

It is quite obvious, in fact it does not appear to be questioned, that the bond sued on was executed pursuant to the requirements of act 368. There had, prior to the enactment of this statute, been numerous suits, which finally came before this court on appeal, in which questions were raised as to the extent of the liability of the surety on contractors' bonds, and act 368 was made broad enough in its terms to include all items which had been previously questioned or would likely be used or employed subsequently in the performance of the construction contracts there enumerated.

Section 53 of act 65 requires a bond in an amount at least equal to the amount of the contract. Act 368 does not specify the amount of the bond. Section 53 of act 65 enumerates the items for which, and the persons to whom, the surety shall be liable, and there follows in the same paragraph the provision that claims for the material, etc., there above-mentioned, "shall be filed with the secretary of the Highway Commission within thirty days after the completion of the work." Act 368 includes all the items embraced in act 65, and adds materially to the liability of the surety, without imposing the condition that claims against the bond be filed with the Highway Commission, as does act 65.

Act 65 provides that the contractor's bond shall be conditioned "as the Commission (Highway) may require," whereas § 3 of act 368 provides that the bond shall specifically include liability "for the things enumerated in § 1 hereof," and further provides that "the failure or refusal of said officer or persons to include said provisions in said bonds shall not prevent the holders or owners of claims, as provided in § 1 of this act, from collecting said claims or bringing suits and enforc-

ing such claims against said bonds." Immediately following is a provision regulating such suits, which does not contain the requirement that the claims be exhibited to and filed with the Highway Commission, but it is provided only "that all suits to enforce claims on bonds as provided herein shall be commenced within six months from the date of final estimate to the contractor."

Section 53 of act 65 contains no limitation as to the time within which suits may be brought, provided the claim is filed with the secretary of the Highway Commission within thirty days after the completion of the work, or within six months from the time the work was abandoned by the contractor, if such were the case, unless the Commission should enter an order extending the time for filing such claims. Act 368 does contain a limitation upon the time within which suits shall be brought, which period of limitation runs, not from the time of filing the claim with the Highway Commission, for no such requirement is imposed, but "from the date of final estimate to the contractor." The only condition upon the right to sue under act 368 is that the suit shall be commenced within six months from the date of final estimate to the contractor.

As a general rule, repeals by implication are not favored, and courts are reluctant to hold that there has been an implied repeal of a statute where that purpose was not expressed. This subject was thoroughly and recently considered in the case of *Louisiana Oil Refining Company* v. *Rainwater,* 183 Ark. 482, 37 S. W. (2d) 96. In the application of the rule stated, we there first held that a statute under review had not repealed a prior statute by implication, but, upon further consideration under a petition for rehearing, we concluded that there had been an implied repeal, and, in so holding, it was said: "As stated by Mr. Justice FIELD in *United States* v. *Tynen,* 11 Wall. (U. S.), p. 88, and quoted with approval on rehearing in *Mays* v. *Phillips County,* 168 Ark. 829-833, 279 S. W. 366: 'When there are two acts on the same subject, the rule is to give effect to both if possible; but if the two are repugnant in any of their provisions, the later act, without any repealing clause, operates, to the

extent of the repugnancy, as a repeal of the first, and, even where two acts are not in express terms repugnant, yet if the later act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.' And this is true, even though the old act contains 'provisions not embraced in the new.' *Wilson* v. *Massie,* 70 Ark. 25, 65 S. W. 942; *Chicago, R. I. & P. Ry. Co.* v. *McElroy,* 92 Ark. 600, 123 S. W. 771; *Eubanks* v. *Futrell,* 112 Ark. 437, 166 S. W. 172; *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649; *State* v. *White,* 170 Ark. 880, 281 S. W. 678. The difficulty is not in stating the rule, as it appears to be one of universal application, but in applying it to a given case.''

We therefore announce our conclusion that, as act 368 is a later act and impliedly repeals the requirement as to filing claims contained in the earlier act, filing the claim with the State Highway Commission is not made a condition essential to bringing suit under the later act.

The question remains whether the suit was commenced within six months from the date of final estimate to the contractor, and upon this question of fact the testimony was to the following effect: The actual construction work was completed on August 25, 1931, and the procedure in regard to obtaining final estimates in this and other similar contracts was as follows: The engineer having supervision of the work inspected it and checked it, making such measurements as were required to ascertain the amount due the contractor. The report thereon would be sent to the district engineer having charge of the work in the district where the work had been done for inspection, and any revision thought necessary. The district engineer then made report to the State Highway Commission in Little Rock, where Mr. Zass, in charge of this department, rechecked the work. In the instant case this was done by Mr. Zass on September 25, 1931, on which date the estimate was mailed to the contractor at its office in Jackson, Mississippi, with the request that the usual release be executed by the contractor, in which the latter, if he executed the release, agreed on the total payment to be made. This was done pursuant to article 9

of the general specifications, under which this and similar contracts were let, reading as follows: ''The Commission, upon the receipt of the engineer's certification of completion and final estimate, and upon receipt of satisfactory evidence from the contractor that all persons furnishing labor or materials have been paid in full, and all persons claiming damages to property or person because of the carrying on of this work have been settled with, or their claims dismissed, or the issues joined, shall certify the estimate for final payment, after previous payments have been deducted, and shall notify the contractor and his surety of the acceptance of the road. On delivery of the final payment, the contractor shall sign a written acceptance of the final estimate as payment in full for the work done. All prior partial estimates and payments shall be subject to correction in the final estimate and payment.'' When the requirement in this particular had been met, all the papers in the case were then referred to the auditorial department of the Commission for action by it, subject to the final review of the chief engineer of the Highway Department. On October 7 Zass wrote the contractor as follows: ''Gentlemen: The final estimate on this project has been passed to the auditor and is now ready for payment with the exception of the settlement of a claim filed by R. M. Leatherman, of Lonoke, Arkansas, in the amount of $673.70, which includes a labor bill of Craig Harper, in the amount of $153.50. Please furnish this office with evidence that the above claim has been satisfied and the voucher will be released.''

Zass testified that the estimate sent the contractor on September 25 was not supposed to be a final and conclusive statement as to the amount due, but was an intermediate step taken in order that the contractor might examine it and make claim for any additional amount to which he considered himself entitled, and that in the instant case the contractor was not satisfied with the estimate, which was for $7,280.60, but claimed an additional credit of $750. Upon this subject the vice president of the Merrill Engineering Company having the settlement in charge testified as follows: ''After talking with Mr. Zass, and Mr. Zass went with me to some other de-

partment—I forget the gentleman's name that we talked to about that—and they agreed to allow the $750, and I just added it in pencil, and we never received another typewritten copy." The witness fixed the date of this revised and final estimate as of October 1, 1931, and we think it was from that date that the six months' period of limitation should be computed, as the statute does not run from the date of a preliminary estimate, but from the date of the final estimate, which we construe to mean the conclusion and determination of the person having final authority to make that finding.

In the case of *Southern Surety Co.* v. *Western Pipe & Steel Co.,* 16 Fed. (2d) 456, the headnote reads as follows: "Under a contract for public work, providing that final payment should be made within 30 days after the final estimate had been approved by the chief engineer, the date of 'final settlement of the contract,' within the meaning of act August 13, 1894, as amended by act February 24, 1905 (Comp. St., § 6923), was not when the final estimate was made by the district engineer, but the date of its approval by the chief engineer."

As both suits were brought within less than six months after October 1, 1931, they were brought within the time limited by law. The judgments must therefore be affirmed, and it is so ordered.