STATE, EX REL. BERRY ASPHALT COMPANY, ET AL. *v.*
WESTERN SURETY COMPANY, ET AL.

5-350                                          266 S. W. 2d 835

Opinion delivered March 22, 1954.

[Rehearing denied May 3, 1954.]

*Tompkins, McKenzie & McRae,* for appellant.

*H. B. Stubblefield,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit brought by the appellant, Berry Asphalt Company, (*a*) to recover judgment for $5,023 for asphalt sold to the North Little Rock Asphalt Company, a corporation that is now insolvent, (*b*) to recover $1,910 of this account from Western Surety Company, as surety upon a contractor's bond executed by the insolvent company, and (*c*) to reach by equitable garnishment the sum of $300 which Street Im-

provement District No. 567 of Little Rock is said to owe the insolvent concern. On these issues the chancellor (*a*) entered judgment by default for the amount sued for, (*b*) held that the suit upon the contractor's bond was filed too late, and (*c*) ruled that the $300 held by the district was not reached by this proceeding. This appeal brings issues (*b*) and (*c*) to us.

In 1950 District 567 and a companion district employed the North Little Rock Asphalt Company to do certain paving work for the districts. The agreement required the contractor to furnish two bonds, both of which were executed by the contractor as principal and by Western as surety. The work was substantially completed in October of 1951, but this suit was not filed by Berry, which had furnished $1,910 worth of asphalt for the job, until February 24, 1953. The chancellor was of the opinion that the suit should have been brought within six months after October, 1951, the month in which he found the work to have been completed and the final estimate to have been made.

Except for a contention that we do not reach, relating to the date of the final estimate, Berry concedes that its suit was delayed too long as far as one of the two contractor's bonds is concerned. This bond is entitled Statutory Performance Bond, secures only indebtedness for labor and materials, and by its terms was executed pursuant to Act 446 of 1911. Ark. Stats., 1947, §§ 51-628 and 51-629.

The dispute upon issue (*b*) centers upon the other bond, which is entitled Performance Bond. The undertaking of this bond is twofold: First, that the contractor will perform and complete the job in a good and workmanlike manner, and, second, that he will save the districts harmless against claims for labor, materials, and certain other items that we need not enumerate, except to say that these items are substantially the same as those listed in § 1 of Act 368 of 1929. Ark. Stats., § 14-604. Berry contends that this second bond is a common law bond upon which the period of limitations is five years.

Western contends that it is a statutory bond, upon which § 3 of Act 368 requires suit to be brought within six months after the date of the final estimate to the contractor. That is the narrow issue to be decided.

We think Berry's position to be well-taken. Act 446 of 1911 required certain public officers, upon entering into construction contracts, to obtain a bond securing liability for labor and materials. Since those who furnish labor and materials for public works are not protected by the general mechanic's lien laws (*Holcomb* v. *American Surety Co.*, 184 Ark. 449, 42 S. W. 2d 765), the purpose of Act 446 was to provide that protection with respect to those public contracts to which the Act applies.

Under the 1911 law questions arose as to the extent of the surety's liability upon the bond for labor and materials, and Act 368 of 1929 was enacted for the purpose of including "all items which had been previously questioned or would likely be used or employed subsequently in the performance of the construction contracts there enumerated." *Consolidated Indemnity & Ins. Co.* v. *Fischer, Etc., Co.*, 187 Ark. 131, 58 S. W. 2d 928.

It is clear that the 1929 statute did not, as Western now contends, require a second statutory bond in addition to the one exacted by the 1911 law. Instead, the 1929 Act is purely interpretational in character. Section 1 (§ 14-604) provides that all bonds required by designated public officers shall be liable for claims for labor, materials, camp equipment fuel, food for men and animals, lumber used in making forms, and several other items that are specifically described. It is true that § 3 (§ 14-606) begins by saying that public officers shall require a bond specifically enumerating the items listed in § 1; but this statement is merely introductory, for the rest of the sentence provides that even though the bond does not so enumerate the items it shall nevertheless be security therefor.

Thus Act 446 of 1911 and Act 368 of 1929, when construed together, do not contemplate the execution of two separate bonds having the same provisions. It is Act 446

alone that requires the bond; Act 368 merely sets out certain claims that are declared to be within the coverage of the bond, whether or not they are explicitly named in the instrument. The question, then, is whether this contractor's Performance Bond is a mere duplication of the Statutory Performance Bond or is instead a common law bond going beyond the statutes.

We think it to be the latter. Although the Performance Bond does secure the payment of claims for labor and materials, it goes farther and assures the obligees that the contractor will perform and complete the job in a workmanlike manner. This protection against the contractor's poor workmanship or default is not even touched upon by Act 446 or Act 368. It follows that the bond is a common law obligation to which the ordinary statute of limitations applies. Upon issue (b) the decree must be reversed.

We may dispose quickly of the garnishment question. It is familiar law that a garnishee cannot enter his appearance; he must be brought into court by process. *Schiele* v. *Dulard*, 94 Ark. 277, 126 S. W. 835. The reason for the rule is given in the two cases there cited. "The garnishee, in the eyes of the law, is a mere stakeholder, a custodian of the property attached in his hands; he has no pecuniary interest in the matter; he has no cost to pay, and therefore none to save; his business is to let the law take its course between the litigants; he has no right to accept or waive service of the proceeding, thereby favoring one party at the expense of and injury to another, and creating actually a privilege with priority in favor of one creditor to the injury of another." *Schindler* v. *Smith, Bullins & Co.*, 18 La. Ann. 476. In the case before us District 567 was not served with process; instead it agreed to enter its appearance and attempted to do so. That appearance being ineffective, the chancellor was correct in holding that the retained $300 was not reached by this proceeding. Upon issue (c) the decree is affirmed.

Mr. Justice McFADDIN concurs.

ED. F. MCFADDIN, Justice (concurring). On issues A and C, I agree with the majority. On issue B, I reach the same result, but by an entirely different process of reasoning.

The majority holds that one bond is a statutory performance bond and the other bond is a contract bond. I find it unnecessary to make such a decision, because the evidence in this case clearly establishes that there has never been a final estimate so as to allow the six-months limitation period to commence under either bond. The only estimate ever made was entitled: ''Estimate No. 7 and Semi-final.'' This was an estimate made by the Engineer for the District on October 11, 1951, and indicated certain defects. The Engineer has never made his final inspection or released the retained money, so the six-months limitation period provided by Statute has never commenced to run. I think it better to put the opinion on that basis, rather than to decide a statutory question.