CITY OF LITTLE ROCK v. ARKANSAS CORPORATION COMMISSION.

4-7707                                        189 S. W. 2d 382

Opinion delivered July 9, 1945.

*Cooper Jacoway* and *Henderson, Meek, Catlett & Henderson,* for appellant.

*Guy E. Williams,* Attorney General, and *J. F. Koone,* Assistant Attorney General, for appellee.

HOLT, J. The question presented, say appellants, "is to determine whether in passing Act 129 of 1941 the Legislature elected to employ an income tax on national bank stock dividends as a substitute for the ad valorem tax on national bank shares. In other words, did Act 129 relieve national banks of the payment of an *ad valorem* tax on their shares?"

It is conceded that a state may tax the shares of stock in national banks located within its limits only as Congress may direct.

Title 12, § 548, U. S. C. A., provides: "The Legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, . . . 1. (a) The imposition by any one of the above . . . forms of taxation shall be in lieu of the others, etc."

Over a long period of time, the State of Arkansas has adopted and followed the first method, *supra,* by an *ad valorem* assessment against the shares of stock (§§ 13729-35, Pope's Digest). This method of taxation was followed until our Legislature, at its 1941 session, passed Act 129, § 5 of which provides: "Section 5. That dividends derived from shares in State and National Banks shall be taxable in the same manner and at the same rate as taxable dividends from foreign and domestic corporations."

Obviously, this Act required all owners of national bank stock to report, as taxable income, dividends derived from such shares.

On March 3, 1942, the Arkansas Corporation Commission (now the Arkansas Public Service Commission), acting upon the advice of the Attorney General, issued an order directing all local tax assessors throughout the state to relieve national banks of the *ad valorem* tax assessment for 1941 on national bank stock.

By appropriate proceedings, appellants appealed from the Commission's order to the Pulaski Circuit Court, Second Division, where, upon a hearing, the Commission's order was affirmed. This appeal followed.

We think the holding of the trial court was correct.

Appellants say that "the solution of the question presented . . . depends upon whether the 1941 Legislature intended the stock dividend tax to be a substituted form of taxation or whether it was to be cumulative and additional to the old *ad valorem* tax on shares."

In the construction of the statute, certain well defined rules must be observed. In 50 Am. Jur., § 225, the text writer says: "A statute is not open to construction as a matter of course. It is open to construction only where the language used in the statute requires interpretation, that is, where the statute is ambiguous, or will bear two or more constructions, or is of such doubtful or obscure meaning, that reasonable minds might be uncertain or disagree as to its meaning. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning. In the case of such unambiguity, it is the established policy of the courts to regard the statute as meaning what it says, and to avoid giving it any other construction than that which its words demand. The plain and obvious meaning of the language used is not only the safest guide to follow in construing it, but it has been presumed conclusively that the clear and explicit terms of a statute ex-

presses the legislative intention, so that such plain and obvious provisions must control." And in § 232: "Courts will not, as a general rule, undertake a correction of legislative mistakes in statutes. This principle is adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the Legislature intended to enact something very different from that which it did enact. The question is not what the General Assembly intended to enact, but what is the meaning of that which it did enact."

In *Refunding Board of Arkansas* v. *Bailey*, 190 Ark. 558, 80 S. W. 2d 61, we quoted with approval from Lewis Sutherland Statutory Construction, vol. 2, p. 698, wherein it is said: "It is beyond question the duty of courts in construing statutes to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. But, . . . first of all, in the words and language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation. The statute itself furnishes the best means of its own exposition; and if the sense in which words were intended to be used can be clearly ascertained from its parts and provisions, the intention thus indicated will prevail without resorting to other means of aiding in the construction," and in the more recent case of *McLeod, Commissioner of Revenues,* v. *Santa Fe Trail Transportation Co.,* 205 Ark. 225, 168 S. W. 2d 413, wherein many authorities are cited in support of certain cardinal rules of construction therein announced, we held: (Headnote 1) "Effect must, if possible, be given to every part thereof." (Headnote 2) "A statute should be given that interpretation that will sustain rather than defeat it." (Headnote 3) "In construing a statute, it will be presumed that the Legislature, in enacting it, did so with the full knowledge of the constitutional scope of its powers, of prior legislation on the same subject and of judicial decisions under the pre-existing law."

It is our view that the meaning of the language used by our lawmakers in the act, *supra,* is so clear and unambiguous that it needs no judicial construction. Primarily, we are concerned here with the meaning of what the Legislature said, or did, rather than what it might have intended. By the language used, the Legislature definitely taxed the dividends received from shares in national banks. In doing so, the lawmakers must be presumed to have known the effect of such legislation, that they were governed by the Federal statute, *supra,* and therefore knew that Arkansas had the right to levy but one form of tax against national bank shares and that this levy would take the place of the former *ad valorem* method of taxing shares since § 5, *supra,* was in direct conflict with the former method.

While it is true that the repeal of a statute by implication is not favored, it is also well settled that where there is an irreconcilable conflict, the last enactment on the subject must control. In *Common School District No. 52* v. *Rural Special School District No. 11,* 146 Ark. 32, 225 S. W. 21, it is said: "There is an irreconcilable conflict between the two acts, and the last enactment controls."

It further appears that § 5 covers the whole field relating to the taxing of national bank shares in Arkansas and therefore the rule as to implied repeals announced in *McLeod, Sheriff,* v. *Shaver,* 198 Ark. 56, 127 S. W. 2d 258, applies here: "We must hold that under the canons of construction, long recognized by all the courts, if the Legislature take up the subject and treat it anew and cover the whole field of legislation, though it may not by express terms refer to any prior statute, the new or last statute must be declared to be the law and the oldest statute be regarded as having been repealed by implication. Particularly is this true if the two acts are repugnant to each other."

Appellants argue that in passing Act 129, the Legislature intended to increase revenues. Whether the Legislature intended to increase the revenues is not controlling in the circumstances here. As a matter of fact, it is

stipulated that the revenues derived under the entire Act were increased.

There is another well established rule of construction applicable here, announced by this court in *McCain, Commissioner of Labor, v. Crossett Lumber Company,* 206 Ark. 51, 174 S. W. 2d 114, wherein we said: ". . . It might be well to observe in passing that in construing an act imposing a special tax, such as we have here, we must construe the same strictly against the state and favorably to the taxpayer, and all ambiguities or doubts therein respecting liability for such tax must be resolved in favor of the taxpayer. *Wiseman* v. *Ark. Utilities Co.,* 191 Ark. 854, 88 S. W. 2d 81; *Hardin* v. *Ft. Smith C. & B. Co.,* 202 Ark. 814, 152 S. W. 2d 1015."

Finding no error, the judgment is affirmed.

ROBINS, J., not participating.