ADAMS *v.* HALE.

4-8649                                    212 S. W. 2d 330

Opinion delivered June 7, 1948.

*Arnold Adams,* for appellant.

*U. A. Gentry, Donald S. Martz* and *Catlett & Henderson,* for appellee.

GRIFFIN SMITH, Chief Justice.   In *Howell* v. *Howell* and *Stevens* v. *Stevens, ante,* p. 298, 208 S. W. 2d 22, (January 12, 1948) it was held that essential provisions of Act 42 of 1947 were violative of Constitutional authority because the General Assembly had usurped an executive function in designating the person who should serve as Chancellor of a Second Division of the Pulaski Chancery Court it was sought to establish.   For reasons stated in the opinion it was then thought by the Court's majority, three justices dissenting, that if denied the right of filling the vacancy necessarily existing when the office was created, the Legislature would have declined to act favorably on the Bill, hence no Division had been established—or, as the Court said, ". . . there was no distinct or independent purpose to divide the Circuit or District and leave the office vacant for almost two years."

That part of the opinion holding a Court had not been made was overruled April 19, the Chief Justice and Mr. Justice ROBINS dissenting.   *Pope* v. *Pope, ante,* p. 321, 210 S. W. 2d 319.

Act 42, by § 4, directs that a Chancellor for the Second Division be chosen at the general election in November, 1948, to take office January 1 and hold for a term of six years.   Compensation is fixed at $6,000 per annum.

The First Chancery Circuit embraces Pulaski, Prairie, Lonoke, and White Counties. Section 1 of Act 42 is expressed in this language:

*"Hereafter, there shall be an additional Chancellor for the First Chancery Circuit, whose jurisdiction in the trial and final determination of all Chancery cases shall include and be limited to the County of Pulaski, except on exchange of Circuits with some other Chancellor as such exchanges are now provided by law."*

Section 6 of Act 42 vests in the Chancellor of the First Division authority to appoint a Court Reporter for the Second Division at a salary of $3,000. The Chancery Clerk (appointed by the Judge presiding over the First Division (§ 7) receives an increase in salary, and the Clerk appoints a deputy (§ 6) who is paid $2,400 per year.

The question presented by this appeal is, Do electors of the *four* counties participate in selection of a Chancellor for the Second Division, or may voters of Pulaski County alone make the determination?

Guy E. Williams and Mrs. Ruth Hale announced as candidates for the democratic nomination for Chancellor of the Second Division. Mrs. Hale qualified in Pulaski County only, contending that since the office pertained to a Division, limited to a single County, its personnel was not a matter of concern to the electorate of Prairie, Lonoke, and White Counties. Williams qualified in all the Counties; whereupon Mrs. Hale brought an action against Arthur L. Adams as Chairman, and Harvey G. Combs as Secretary of the State Democratic Committee to enjoin them from certifying to the County Committees of Prairie, Lonoke, and White, the name of Guy E. Williams as a candidate. The trial Court found for the petitioner, and this appeal followed, with oral argument during the morning of May 31.

It was said in the *Pope case* that Act 42 was patterned after Act 372 of 1923, which authorized an additional Chancellor for the Seventh District and gave to the Division jurisdiction in but two of the six counties —Ouachita and Union. Lafayette, Columbia, Dallas, and Calhoun, with Ouachita and Union, constitute the Circuit. Act 15 of 1931 amended Act 372 by providing that the Second Division "in the Seventh Chancery District"

should convene court at designated times. Act 5 of 1939 extended the Second Division to include Columbia County. Much of the language of Act 372 is copied *verbatim* in Act 42. This furnishes proof absolute that those who drafted Act 42 had Act 372 as a guide.

In 1937, by Act 171, six-year terms were established for Chancellors. Section 1 of the Act provides that "The Chancellors of the respective Chancery Circuits *shall be elected by the qualified electors of the several Chancery Circuits.*".

Act 3 of 1939, consolidating the jurisdiction of Probate Courts with Chancery, mentions "the Chancellor of any Circuit," and "any County in his Circuit." Act 5 of 1939 refers to "the Second Division of the Chancery Court of the Seventh Chancery Circuit." The decrees signed by Mrs. Hale in *Howell* v. *Howell* and in *Stevens* v. *Stevens* were necessarily executed in her capacity as Chancellor of the Second Division of Pulaski Chancery Court, First Circuit; and certainly, in view of the decision in *Pope* v. *Pope, the First and Second Divisions of the First Chancery Circuit of Arkansas* were recognized, for that is what Act 42 says.

It is argued by appellee that because § 2797 of Pope's Digest creates separate Courts of Chancery "in every County," the Second Division established by Act 42 is segregated, notwithstanding the provisions of Act 171 of 1937, Pope's Digest, § 2795. The statute directs action by qualified electors "*of the several Circuits.*" The language relating to Circuits, it is said, "must be interpreted in the light of the general plan and purpose for which the several Chancery Circuits were created in the first instance, namely, to provide for a Chancellor to serve the entire Circuit in which he is elected."

We take judicial notice that Chancellors for the Second Division of the Seventh Circuit have been regularly chosen by voters of all of the counties. Election returns are on file with the Secretary of State, that official being directed by law to receive them. It is inconceivable that those who drafted Act 42 were not familiar with

construction given the Seventh Circuit Act. True, there has not been a judicial determination of the question now presented; but in no election since 1923 have the rights of voters of all Counties in the Seventh Circuit been questioned; nor do the citizens of Ouachita, Union—and later Columbia—Counties appear to have felt they were discriminated against, or that rights guaranteed by Art. II, § 2, of the Constitution of Arkansas have been violated.

Evidence of the General Assembly's belief that it had created a District office, or, rather, that Pulaski County remained a part of the First Circuit as such, is found in Act 276, approved March 19, 1947. It became a law more than a month after Act 42 was approved by the Governor, and is "An Act to make appropriation for an additional Chancellor for the First Chancery Circuit of Arkansas." The expression "First Chancery Circuit" appears four times in the measure.

We think the Special Chancellor, in granting injunctive relief to the petitioner, erred for these reasons:

(1) Act 171 of 1937 expressly directs that Chancellors be elected by voters "of the several Chancery Circuits."

(2) Strictly speaking, one County cannot be a "Circuit," although by appropriate language the General Assembly may divide a Circuit, and that division is not unlawful merely because a single County forms the judicial unit.

(3) The appropriation for salary—Act 276 of 1947 —is for an officer of a Circuit, and payment is from the State's general fund.

(4) In *Howell* v. *Howell, Pope* v. *Pope,* and in the two dissenting opinions written January 12th, the "Second Division" is spoken of as a part of the First Circuit.

(5) A Chancellor elected by the four Counties of the First Circuit is vested with power (in the absence of supervisory mandate, Art. VII, § 4, Constitution of

594

1874) to neutralize the Second Division by assigning to the First Division any case that may be filed in Second Division. The First Division Chancellor, acting for all of the people of all of the Counties, appoints the Second Division stenographer and Clerk, and indirectly controls appointment of the Clerk's deputy.

(6) Official conduct long pursued will be given great weight in determining intent; hence election participation by all Counties of the Seventh Circuit in selection of a Chancellor for the Second Division creates a presumption that the lawmakers, in literally copying from Act 372, knew of the construction given that measure, and acquiesced in it.

(7) If, with knowledge that voters of the Seventh Circuit had not been denied the right to select their Chancellors, the General Assembly used Act 372 as a model, and declined to restrict the right of franchise, then it is not the duty of a Court to assume that the lawmakers, through oversight alone, failed to affirmatively express an intent contrary to what can be gathered from wording of the Act.

(8) There is nothing ambiguous about that part of § 1 of Act 42 that says, ''Hereafter there shall be *an additional* Chancellor *for the First Chancery Circuit.*''

It follows that the decree must be reversed. This is done, with direction that the injunction be dissolved.

In briefing the case neither side raised the question of equity's jurisdiction. Since affirmative relief is not granted the petitioner, determination of the power of equity in a case like this is reserved.