WOODROW COOK, SPECIAL ADM'R v. ANDY BEVILL

5-4865                                    440 S.W. 2d 570

Opinion Delivered May 5, 1969
[Rehearing denied June 2, 1969.]

*Oscar Fendler* for appellant.

*Graham Partlow, Jr.* for appellee.

LYLE BROWN, Justice.   Appellant Woodrow Cook, administrator of the estate of Elijah J. Bryeans, deceased, and appellee Andy Bevill, each claim ownership of the proceeds of a certificate of deposit issued in the names of E. J. Bryeans or Andy Bevill.   Since the certificate was dated April 18, 1967, resolving the issue requires an interpretation of Acts 78 and 444 of 1965. This is a case of first impression under those acts. The chancellor, in awarding the proceeds to Bevill, applied Act 444.

Elijah Bryeans held a deposit box at Farmers Bank of Blytheville when he died intestate in September 1967. He had placed in the lockbox two certificates of deposit. One was in the principal sum of $10,000 and in Mr. Bryeans' name only.   The other certificate was in the sum of $8360 and was issued in the form "E. J. Bryeans or Andy Bevill."   The depositor signed nothing.   Mr. Bryeans purchased the certificates with his individual funds and he alone was given a key to the lockbox.   His heirs apparently consisted of two sisters, one of whom was the mother of Andy Bevill.   There was a close re-

lationship between the uncle and his nephew. Mr. Bryeans was in ill health during the last eight years of his life and Andy was very attentive to him. It was the banker's recollection that Mr. Bryeans expressed an intention that Andy Bevill have the proceeds of the deposit made in the two names in the event of Mr. Bryeans' prior death.

There are three legislative enactments to be considered. They are Act 260 of 1937, appearing in Ark. Stat. Ann. § 67-521 (1947); Act 444 of 1965, digested in Ark. Stat. Ann. § 67-521 (Repl. 1966); and Act 78 of 1965, Ark. Stat. Ann. § 67-552 (Repl. 1966). Although Act 260 was amended by Act 444 we think Act 260 is significant in shedding light on the intent of the Legislature when it enacted Act 444. After a careful analysis of the enumerated acts we conclude that Act 444 is not a survivorship statute, as was its predecessor, Act 260. In that respect we disagree with the chancellor.

Prior to 1965 we had one short statute dealing with the rights of parties in bank deposits standing in two names. That was Act 260 of 1937. Here are the pertinent parts, including the title:

AN ACT Defining Rights of Parties in Bank Deposits in Two Names and Providing for the Payment of the Same.

When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and

such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof.

Act 260 had a twofold purpose. It protected the bank in making payments from deposits in the names of any two persons; and it declared "a definite and conclusive relation of the parties to such deposit on the death of either . . ." *Pye* v. *Higgason*, 210 Ark. 347, 195 S.W. 2d 632 (1946). The modification of Act 260 by Act 444 was preceded by the passage of Act 78. The provisions of Act 78 have an important bearing on our interpretation of Act 444 and for that reason Act 78 should first be discussed.

Act 78 was approved February 12, 1965. It was our first comprehensive enactment governing joint bank accounts. Two years previously a very similar act was passed affecting joint deposits in savings and loan associations. See Ark. Stat. Ann. § 67-1838 (Repl. 1966). The principal virtue of Act 78 is the requirement of *designation in writing;* that is, when an account is opened or a certificate of deposit is issued in the name of two or more persons, a written designation is made as to the investiture of title. The act enumerates joint tenancy, joint tenancy with right of survivorship, and tenancy in common. It also authorizes a depositor to designate that on his death the funds represented by the account or certificate shall be paid the person or persons listed by the depositor. An exception to the requirement of making written designation is made as to an account or certificate in the name of husband and wife; in that situation the deposit becomes by operation of the statute a tenancy by the entirety.

All paragraphs in Act 78, excepting the one designated (d), deal directly or indirectly with survivorship. Paragraph (d) reads as follows:

If an account is opened or a certificate of deposit is purchased in the name of two (2) or more persons, whether as joint tenants, tenants by the entirety, tenants in common, *or otherwise, a bank-*ing institution shall pay withdrawal requests, accept pledges of the same, and otherwise deal in any manner with the account or certificate of deposit upon the direction of any one (1) of the persons named therein, whether the other persons named in said account or certificate of deposit be living or not; unless one (1) of such persons named therein shall by written instructions delivered to the banking institution designate that the signature of more than one (1) person shall be required to deal with such account or certificate of deposit.

We have italicized the phrase in paragraph (d) "or otherwise." That phrase could not afford protection to the bank in every conceivable situation. It must be interpreted in light of the context of Act 78 of which it is a part. *Designated in writing* is the theme of the entire act. Paragraph (d) refers to those accounts and certificates of deposit wherein the named persons are designated as joint tenants, tenants by the entirety, tenants in common, *or other designation is made affecting survivorship.* The italicized phrase is the meaning attributable to the term "or other wise." Therefore, in a matter of weeks after the passage and approval by the Governor of Act 78, the General Assembly amended Act 260 of 1937 to delete survivorship therefrom and to afford further protection to the banks in paying out funds held in the names of two or more persons. In its effort to eliminate the treatment of survivorship by Act 260, the Legislature made these significant changes in a bill which became Act 444;

1. The phrase in the title of Act 260, "Defining Rights of Parties in Bank Deposits in Two Names," was deleted from the title of Act 444. The single purpose stated in the new title was simply to authorize a bank to pay to any one of the multiple parties named in a deposit the proceeds of the account.

2. Act 444 deleted from Act 260 the phrases "or to the survivor of them" and "or to the survivor after the death of one of them." Consequently the word "survivor" nowhere appears in Act 444.

Act 78 did not provide protection for a bank in the event it paid out funds in instances where no written designation of survivorship was made and the named parties were still alive. Act 444 established that protection when such an account is processed in the manner therein provided.

The chancellor took the position that the phrase in Act 444—"shall become the property of such persons as joint tenants"—created a survivorship. We have not lightly considered that theory; however, we think that position is outweighed when we consider the entire picture of the legislation and find what reasonably convinces us was the legislative intent. We could cite a multitude of cases which hold the primary rule in statutory construction to be the determination of the intent of the lawmakers. If that cannot be precisely ascertained from the language of the act, we look to other sources. The legislative history, the title, the object sought to be accomplished, and the expediency of the act are among the many appropriate sources which shed light on legislative intent.

It is a mild statement to say that Act 260 of 1937 created a maze of problems in the handling of joint bank deposits and certificates. Much litigation over those deposits has reached this Court. Many decisions had to be made by ascertaining the intent of the depositor

from parol evidence and "after death had sealed the lips of the person principally concerned." *Ratliff* v. *Ratliff, Adm'x.*, 237 Ark. 191, 372 S.W. 2d 216 (1963). Act 260 had minimal written requirements which fell far short of being sufficient. In that situation the Legislature and the banking interests turned to the comprehensive act under which the building and loan associations had been operating for two years. It was incorporated, in most essentials, in Act 78. That act was supplemented by Act 444.

In harmonizing the two acts of 1965 we have not thus far mentioned some other factors which are significant. The same legislative body authored both acts; the same legislative committees on banks and banking evaluated the proposed legislation; and we perceive that leaders in the banking business attended the public hearings. It is inconceivable that they would intentionally approve a comprehensive act in one breath and then forthwith pass a second act substantially out of harmony with the first. Had it been their intention to modify any part of Act 78 they would surely have so stated in Act 444 and in terms of specifics. Our Court follows a maxim of the common law, namely, that acts passed on the same subject should be construed together and, if possible, reconciled to effect the legislative intent. *McFarland* v. *The Bank of the State*, 4 Ark. 410 (1842); *Ward* v. *Harwood*, 239 Ark. 71, 387 S.W. 2d 318 (1965).

This final point as to whether Act 444 treats survivorship. At one time this Court said that Act 260—predecessor to Act 444—did not establish rights of survivorship between the named parties. *Black* v. *Black*, 199 Ark. 609, 135 S.W. 2d 837 (1940). Since in 1940 this Court thought that Act 260 did not apply to survivorship, we cannot conceive it to so apply after being amended and stripped of its original title referring to "right of the parties in bank deposits in two names"; of the phrase "to be paid to either or to the survivor of

812

them''; and of the statement ''or to the survivor after the death of one of them.''

We hold that with reference to bank deposits and certificates in multiple names made after the effective date of Act 78, there must be a substantial compliance with the ''designation in writing'' requirements of that act in order to effect survivorship. Mr. Bryeans, in purchasing the certificate, did not affix his signature to any instrument. As was the situation in *Ratliff* there was no minimum formal action taken by the depositor.

The decree is reversed and the cause remanded with directions that judgment be entered in favor of appellant.

HARRIS, C.J., and FOGLEMAN and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I would affirm the judgment of the chancery court. While I agree, academically, with many of the statements contained in the majority opinion and with many of the rules of construction stated therein, my fundamental basis of disagreement with the majority is that I find absolutely no necessity for resort to rules of interpretation and construction in determining the application and effect of Act 444 of 1965, or in determining the legislative intent. These rules may be resorted to only where necessary, i.e., where the language of the statute itself is ambiguous or gives rise to some doubt about the effect of the act. There was no reason in this case to seek the legislative intent outside the language of the statute itself or to rely upon rules of construction. In order that the treatment of Act 444 be put in proper perspective, it is necessary to examine the full text thereof. It appears as Ark. Stat. Ann. § 67-521 (Repl. 1966). It reads:

> ''When a deposit shall have been made in the names of two [2] or more persons and in form to be paid to any of the persons so named, such de-

posit and any additions thereto made by any of the persons named in the account, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any of said persons. Such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge of said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of said joint tenants not to pay such deposit in accordance with the terms thereof.''

The language of this statute is clear and unambiguous. This being the case, there is no justification for resort to any exploration for the legislative intent or room for construction. Where the language of a statute is unambiguous the intention of the legislature must be gathered therefrom. *Arkansas Valley Trust Co.* v. *Young,* 128 Ark. 42, 195 S.W. 36. It must be sought from the plain meaning of the language used. *Hopper* v. *Fagan,* 151 Ark. 428, 236 S.W. 820; *Wheelis* v. *Franks,* 189 Ark. 373, 72 S.W. 2d 231; *McCarroll* v. *Williams,* 195 Ark. 715, 114 S.W. 2d 18. In *Call* v. *Wharton,* 204 Ark. 544, 162 S.W. 2d 916, we said:

"In interpreting and construing the meaning of statutes, the guiding rule is very clearly announced by the late Chief Justice Hart in *Berry* v. *Sale,* 184 Ark. 655, 43 S.W. 2d 225, 226, in this language: 'This court has uniformly held that, in the construction and interpretation of statutes, the intention of the Legislature is to be ascertained and given effect from the language of the act if that can be done...' ''

In *Refunding Board of Arkansas* v. *Bailey,* 190 Ark. 558, 80 S.W. 2d 61, we held that the primary rule of construction of statutes is to ascertain and give effect to the in-

tent of the lawmakers. The guide to doing so is clearly set out in that opinion where we said:

> "In construing a statute, it may be, and frequently is necessary to consider other acts in connection with the act under consideration, in order to ascertain the intention of the Legislature. *But where, by the act itself, the intention of the Legislature is plain from the face of the statute and the language used, there is no room for construction.*
>
> 'It is beyond question the duty of courts in construing statutes to give effect to the intent of the lawmaking power, and seek for that intent in every legitimate way. But * * * *first of all in the words and language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation.* It is not allowable to interpret what has no need of interpretation. The statute itself furnishes the best means of its own exposition; and *if the sense in which words were intended to be used can be clearly ascertained from its parts and provisions, the intention thus indicated will prevail without resorting to other means of aiding in the construction.'* Lewis' Sutherland Statutory Construction, vol. 2, p. 698." [Emphasis ours.]

Construction and interpretation have no place where the terms of a statute are plain and certain. *Hopper* v. *Fagan,* supra. While it is the duty of the court, in interpreting a statute, to give effect to the intention of the lawmaking body, when the act is plain and unambiguous so that no doubt arises from its terms, it needs no interpretation, and courts must follow the act implicitly. *Broadway-Main Street Bridge District* v. *Taylor,* 186 Ark. 1158, 57 S.W. 2d 1041. Where the language of a statute is plain and unambiguous, it needs no con-

struction, and it is the duty of this court to ascribe to the statute the meaning evidenced by the language used. *St. Louis I.M. & S. Ry. Co.* v. *Waldrop,* 93 Ark. 42, 123 S.W. 778; *Agee* v. *Snodgrass,* 196 Ark. 266, 117 S.W. 2d 28. Where the language used is clear and unambiguous, we are concerned with the meaning of what the legislature said or did rather than what it might have intended. *City of Little Rock* v. *Arkansas Corporation Commission,* 209 Ark. 18, 189 S.W. 2d 382. We must give unambiguous language employed in an act its obvious meaning. *Wheelis* v. *Franks,* 189 Ark. 373, 72 S.W. 2d 231. The courts have no power to construe a statute to mean anything other than what it says, if it is plain and unambiguous. *Johnson* v. *Lowman,* 193 Ark. 8, 97 S.W. 2d 86. See also *Cross* v. *Graham,* 224 Ark. 277, 272 S.W 2d 682. Neither the exigencies of a case nor a resort to extrinsic facts will be permitted to alter the meaning of plain and unambiguous language used in a statute. *Cunningham* v. *Keeshan,* 110 Ark. 99, 161 S.W. 170. It is only where the terms used in an act are ambiguous that construction is permissible to determine the legislative intent. *Wilson* v. *Biscoe,* 11 Ark. 44. We must determine the intention of the legislature from the language of the act itself, where it is unambiguous. *Raines* v. *Bolick,* 183 Ark. 832, 39 S.W. 2d 309; *Tolleson* v. *McMillan,* 192 Ark. 111, 90 S.W. 2d 990; *Miller* v. *Yell and Pope Bridge District,* 175 Ark. 314, 299 S.W. 15; *Manley* v. *Moon,* 177 Ark. 260, 6 S.W. 2d 281.

There is nothing unclear or ambiguous about language saying that when a bank deposit is made in a certain way and under such circumstances "such deposit and any additions thereto made by any of the persons named in the account shall become the property of such persons as joint tenants." In order to reach its result, it was necessary for the majority to read this language out of the statute. This was unjustified and unauthorized. A statute must be construed, if possible, so that no clause, sentence or word shall be void, superfluous or

insignificant. *Wilson* v. *Biscoe,* supra. Where the legislative intent can be ascertained from the language of the act itself, there is no excuse for adding to or changing the meaning of the language employed. *Call* v. *Wharton,* 204 Ark. 544, 162 S.W. 2d 916; *Berry* v. *Sale,* 184 Ark. 655, 43 S.W. 2d 225. We are required to give effect to all language employed in the context if reasonable and consistent. *McClure* v. *McClure,* 205 Ark. 1032, 172 S.W. 2d 243. Every word in a statute must be given effect if possible. *Monsanto Chemical Company* v. *Thornbrough,* 229 Ark. 362, 314 S.W. 2d 493. Where the language is plain and unambiguous, courts cannot add to, take from, or change the language of the statute to give effect to any supposed intention of the legislature. *McCarroll* v. *Williams,* 195 Ark. 715, 114 S.W. 2d 18. To do so would be to encroach upon the peculiar function of the sovereign power lodged in a coordinate branch of the government. *Arkansas Valley Trust Co.* v. *Young,* 128 Ark. 42, 195 S.W. 36. We cannot refuse to give effect to the plain language of a statute merely because we think it brings about an inequitable result in a particular case. *Cupp* v. *Frazier's Heirs,* 239 Ark. 77, 387 S.W. 2d 328.

Acts 78 and 444 can be construed in harmony, without doing violence to any of the language of Act 444. New legislation must be construed with reference to existing legislation on the subject. *Newton County Republican Central Committee* v. *Clark,* 228 Ark. 965, 311 S.W. 2d 774. I agree with the majority that Act 78 appearing as Ark. Stat. Ann. § 67-552 (Repl. 1966) has to do only with accounts in two or more names where the parties are either designated as husband and wife or where the relationship of the parties is designated in writing. Thus, in order for Act 78 to be effective there must either be a designation in writing that the account is to be held in "joint tenancy" or in "joint tenancy with right of survivorship" or as "tenants in common" or there must be a designation of the parties to a banking institution as husband and wife. Nothing whatever is said in that

act about the title to a deposit in two or more names in form to be paid to any of the persons named where there is no such designation. It is obvious to me that the General Assembly, its committees, the leaders in the banking business and anyone else who had anything to do with the passage of Act 444 realized that the specific repeal of Act 260 of 1937 by Act 78 of 1965 left the law in a quagmire as to the ownership of deposits where no designation was made. None of the decisions under Act 260 of 1937 could any longer be applicable. Consequently, they virtually re-enacted Act 260 of 1937 eliminating therefrom only the requirement that the deposit must be payable to either or the survivor. Thus the act as amended can only cover situations where a designation has not been made. The differences in Act 260 of 1937 and Act 444 of 1965 are insignificant, except as above mentioned. Whatever differences there are, the similarities are such that the holding in *Pye* v. *Higgason*, 210 Ark. 347, 195 S.W. 2d 632, with reference to the 1937 act as to purposes should be controlling. In that case it was held that the act, because of the language it contained, was passed, not only for the protection of the bank in which the account was deposited, but for the purpose of declaring a definite and conclusive relation of the parties to such deposit on the death of either and prior to receipt by the bank of written notice signed by any one of the joint tenants not to pay the deposit in accordance with its terms. When the legislature uses one act as the model for a new one, there is a presumption that it knew of the construction given the earlier act and the courts will not give the new act a different construction. *Adams* v. *Hale,* 213 Ark. 589, 212 S.W. 2d 330. I humbly submit that that is just what the majority has done in this case. It has not suggested what the words ''shall become the property of such persons as joint tenants'' should be taken to mean in Act 444. It has been held that survivorship is one of the results of joint tenancy. *Ferrel* v. *Holland,* 205 Ark. 523, 169 S.W. 2d 643; *Pye* v. *Higgason,* supra. I submit that joint tenancy means just that in Act 444, especially since

818

the legislature did not give the words any definition eliminating survivorship.

Undue emphasis is placed by the majority upon the title of Act 444. The title of an act is no part of the act itself. *Laprairie v. City of Hot Springs,* 124 Ark. 346, 187 S.W. 442; *Special School District No. 33 v. Howard,* 124 Ark. 475, 187 S.W. 444; *McLeod v. Purnell,* 164 Ark. 596, 262 S.W 682; *Glover v. Henry,* 231 Ark. 111, 328 S.W. 2d 382. There is no constitutional requirement that an act have a title. The legislature and courts of Arkansas have not been hamstrung by limitation on subject matter by titles of acts since the adoption of the constitution of 1874. *Laprairie v. City of Hot Springs,* supra. It is only where the meaning of the lawmakers is in doubt from an examination of the act itself that the title of a statute has any force in interpretation of its meaning. Anderson, "Drafting a Legislative Act in Arkansas," 2 Ark. L. Rev. 382, 385, 386; *State v. White,* 170 Ark. 880, 281 S.W. 678; *City of Conway v. Summers,* 176 Ark. 796, 4 S.W. 2d 19; *Graves v. Burns,* 194 Ark. 177, 106 S.W. 2d 602. See also *Huff v. Eudy,* 173 Ark. 464, 292 S.W. 693; *Matthews v. Byrd,* 187 Ark. 458, 60 S.W. 2d 909, 2 A.L.R. 385; *Special School District No. 33 v. Howard,* supra; *Drainage District No. 18 v. McMeen,* 183 Ark. 984, 39 S.W. 2d 713; *Matthews v. Byrd,* supra; *Berry v. Gordon,* 237 Ark. 547, 376 S.W. 2d 279.

I find reinforcement for my construction of the act in two other factors, which are characteristic of joint tenancies. Under Act 444 either of the persons in whose name the account is carried may give written notice to the bank in which the funds are deposited not to pay such deposit in accordance with the terms thereof. This is certainly inconsistent with a result that makes the estate of a party to a joint account who dies the owner of the account rather than the survivor. The other factor is that the bank's payment of the account to either party is not limited to their joint lives. Thus every word in Act 444 is consistent with a joint tenancy but

not with a tenancy in common or individual ownership by one party to the exclusion of the other.

In view of the fact that the construction I give the act would harmonize the two acts passed at the same session, would not result in rendering any of the words of the latest act passed meaningless, and would not resolve any conflict in favor of the earlier act passed, I submit that this is the proper construction.

Even if rules of interpretation or construction were properly resorted to, the majority opinion permits the last act passed to be amended by a prior act. This violates a primary rule of statutory construction. Where the legislature enacts two acts at the same session which are conflicting, the latest expression of the legislative will should prevail. *Williams* v. *State,* 215 Ark. 757, 223 S.W. 2d 190.

HARRIS, C.J., and HOLT, J., join in this dissent.